# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

TERRY L. SCHMITT,

                                Plaintiff,

       v.                                      5:11-CV-796
                                          (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

KAREN S. SOUTHWICK, ESQ., for Plaintiff
DAVID L. BROWN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

    Plaintiff "protectively filed"[1] an application for Supplemental Security Income ("SSI") benefits on June 21, 2006, alleging disability beginning June 12, 2006, resulting from seizures, lower back pain, and right knee pain. (Administrative Transcript (T) 98-100).  Plaintiff's application was denied initially, and plaintiff requested a hearing. (T. 92)  Plaintiff appeared and testified at a hearing before

_____

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  *See* 20 C.F.R. § 404.630. There are various requirements for this written statement.  *Id.*  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.  Plaintiff's actual application in this case is dated July 14, 2006. (*See* T. 97-100, 102 (Protective Filing Worksheet)).

Administrative Law Judge ("ALJ"), F. Patrick Flanagan. (T. 466-504).  On May 1, 2009, the Appeals Council remanded the matter for further hearing.[2] (T. 49-52).

ALJ Flanagan held the second hearing on May 6, 2010, at which in addition to plaintiff's testimony,[3] the ALJ heard the testimony of medical expert, Thomas H. Weiss, M.D.; and Vocational Expert ("VE") Esperanza Distefano. (T. 505-537).  After the second hearing, ALJ Flanagan denied plaintiff's application in a written decision, dated June 18, 2010. (T. 20-30).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 20, 2011. (T. 5-8).

## II.   APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

---

[2] The Appeals Council identified seven specific things for the ALJ to do on remand: (1) obtain updated evidence of plaintiff's orthopedic impairments from treating sources, including any evidence of surgery; (2) obtain additional evidence regarding plaintiff's orthopedic impairments from consultative sources: (3) obtain the evidence of an orthopedic medical expert to clarify the nature and severity of plaintiff's impairment; (4) properly consider the opinion of plaintiff's treating nurse practitioner, N.P. Dorothy Champney; (5) provide further analysis of plaintiff's subjective symptoms in accordance with the regulations: (6) re-evaluate plaintiff's Residual Functional Capacity ("RFC") with specific references to the record; and (7) obtain Vocational Expert ("VE") testimony if warranted. (T. 51-52).

[3] Plaintiff was represented by counsel at both hearings.

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

3

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for

that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   FACTS

Defense counsel has extensively discussed the medical and vocational evidence in this case, and plaintiff's counsel has discussed some additional evidence in the record not mentioned by defense counsel. (Def.'s Br. at 2-12; Pl.'s Br. at 2-10). This court will adopt the facts as discussed by both counsel, together with the facts as stated in the ALJ's decision, with any exceptions as noted in the following discussion.

## IV.   THE ALJ'S DECISION

The ALJ found that plaintiff had three severe impairments: degenerative disc disease, a history of knee injury; and a history of seizure disorder. (T. 22). The ALJ found that plaintiff's history of alcohol and cannabis abuse did not affect plaintiff's ability to perform work-related activities more than minimally, and thus, were not severe impairments. (T. 22-23). Because the alcohol and cannabis abuse were considered "mental" disorders, the ALJ analyzed the limitations placed upon plaintiff by these impairments, using the Commissioner's Psychiatric Review Technique. (T. 23). The ALJ discussed the plaintiff's alcohol-induced seizure disorder from 2003, and his 2004 hospitalization for grand mal seizures. (T. 23). By June 2006, plaintiff had not had any seizures in the recent past; and once the plaintiff stopped using alcohol, the seizures stopped. (*Id.*)

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment at Step Three of the analysis, considering Listings 1.04 (disorders of the spine) and 11.03 (epilepsy or seizures). (T.

24-25).  At Step Four, the ALJ found that plaintiff had the Residual Functional

Capacity ("RFC") to perform less than a full range of sedentary work as defined in the

regulations. (T. 25).  The ALJ found that plaintiff could lift or carry 10 pounds

occasionally and less than 10 pounds frequently; could stand or walk 2 hours in an 8-

hour day and sit 6 hours in an 8-hour day, but must be able to sit or stand "at will" and

should avoid extensive exposure to hazards such as operating machinery and working

at heights. (*Id.*)

In making his RFC determination, the ALJ considered the medical expert's

testimony that plaintiff could at a "minimum" perform sedentary work. (T. 25).  The

ALJ then stated that he would grant plaintiff "the benefit of the doubt" and find that

sedentary work would be the "maximum RFC." (*Id.*)  The ALJ relied upon

consultative examiner, Kalyani Ganesh, M.D., who examined plaintiff once in 2006

and again in 2008.  In 2008, Dr. Ganesh found that plaintiff had "mild to moderate

limitation in lifting, carrying, pushing and pulling and should avoid activities such as

driving, activities at heights, on machinery and swimming." (*Id.*)  The ALJ specifically

rejected the opinions of Mahesh Kuthuru, M.D. and Nurse Practitioner ("NP")

Champney, both of whom are from Upstate Pain Medicine, P.C. ("UPM").  The ALJ

found that these assessments exaggerated plaintiff's limitations. (T. 26).  The ALJ

noted that NP Champney was not an "acceptable medical source" under the

regulations, but did consider her opinion, finding that it was entitled to little weight, in

part because she stated that plaintiff's limitations had existed for 25 years, when she

had only examined plaintiff twice in 2008. (*Id.*)

The ALJ also rejected the limitations imposed by Dr. Margaret Sennett, M.D.,

6

who, in January of 2010, completed a very restrictive RFC evaluation, finding that plaintiff could not do any significant walking, could only stand 5 minutes at a time, and could only sit for 15 minutes at a time. (T. 27). Lifting was also severely restricted. Although plaintiff refers to Dr. Sennett as a treating physician, the ALJ noted that her opinion was "broadly out of keeping with the entirety of the record that it can be given no significant evidentiary weight . . . ." (T. 27). The ALJ also pointed out that the "most damaging to Dr. Sennett's opinion" was that she only examined plaintiff twice, she never reported physical findings on either occasion, and only one examination report even mentioned plaintiff's back problem. The other report only discussed his alcoholism.[4] Finally, the ALJ noted plaintiff's testimony at the original hearing that he could sit for 7 hours per day, and admitted that he only used a cane "'very occasionally.'"[5] (T. 27).

The ALJ also considered plaintiff's pain and stated that although plaintiff's medically determinable impairments could be expected to cause some of the symptoms alleged by plaintiff, the plaintiff's statements indicating greater restrictions were not credible to the extent that they were inconsistent with the ALJ's RFC evaluation. (T. 28). The ALJ found that plaintiff no longer took narcotic medications, and testified that he used a muscle relaxant, with no significant side effects from his medications. (T. 27).

---

[4] The ALJ also rejected the State Agency opinion that plaintiff could perform "medium" work because there is "sufficient pathology" to limit plaintiff to lifting and carrying less weight than that required for medium work. (T. 27). Thus, the ALJ rejected both extremes of functional analysis to determine that plaintiff could perform a limited range of sedentary work.

[5] The ALJ noted that plaintiff did not bring a cane to the hearing. (T. 27).

Because of the limited amount of sedentary work that plaintiff could perform, the ALJ obtained the testimony of a VE.  The VE testified in response to a hypothetical question, covering plaintiff's additional restrictions, that plaintiff could still perform three different jobs in the national economy, consistent with the Dictionary of Occupational Titles ("DOT"). (T. 29).  Based on the VE's testimony, the ALJ found that plaintiff was not disabled. (*Id.*)

## V.   PLAINTIFF'S CONTENTIONS

Plaintiff makes four arguments in support of reversal of the Commissioner's determination:

(1)   Plaintiff's back impairment meets the severity of a Listed Impairment under 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04. (Pl.'s Br. at 12-15).

(2)   The ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Br. at 15-22).

(3)   The ALJ failed to properly analyze plaintiff's credibility. (Pl.'s Br. at 22-24).

(5)   The ALJ used an incomplete hypothetical question, and therefore, his determination at Step 5 was not supported by substantial evidence. (Pl.'s Br. at 24-25).

Defendant argues that the ALJ's findings are supported by substantial evidence, and that this court should affirm the findings of the Commissioner.  For the following reasons, this court agrees with defendant and will recommend dismissing the complaint.

## VI.   DISCUSSION

### A.   Listed Impairment

Plaintiff argues that his back impairment meets the severity of Listing 1.04.  In

8

his decision, the ALJ's decision stated only that the plaintiff did not have an impairment or combination of impairments that met the severity of a listed impairment. (T. 24). The ALJ stated only that Listings 1.04 and 11.03 were "considered." (*Id.*) There was no further analysis.

Listing 1.04 involves "Disorders of the Spine." Plaintiff's impairment would be considered under Listing 1.04(A).[6] This section of the Listings reads as follows:

> 1.04   *Disorders of the Spine* (e.g., herniated nucleus
> pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda
> equina) or the spinal cord.
> With:
> A.   Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine, motor
> loss (atrophy with associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is involvement of the
> lower back, positive straight leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04 & 1.04(A). Plaintiff argues that the ALJ did not specify the reasons for his finding, and that his failure to do so was not "harmless error because substantial evidence supports a finding that plaintiff's spine impairment is of listing severity. (Pl.'s Br. at 12). While it is true that the ALJ's decision does not contain any specific analysis of the Listings, other than to state that plaintiff does not meet them, "other portions of the ALJ's detailed decision . . . demonstrate that substantial evidence supports this part of the ALJ's determination." *See Salamini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. Mar. 25, 2010)

---

[6] Plaintiff does not cite any other section of Listing 1.04, and in his brief cites the requirements of Listing 1.04(A). (Pl.'s Br. at 12 n.2).

(the absence of an express rationale for an ALJ's conclusion does not prevent the court from upholding it as long as other portions of the ALJ's decision and the clearly credible evidence show that the determination is supported by substantial evidence).

Although plaintiff's counsel cites various portions of Listing 1.04, stating that plaintiff's medical records show that he exhibits the appropriate symptoms, he neglects to mention all of the symptoms that are required for the Listing. Listing 1.04 requires that motor loss be associated with muscle atrophy and associated muscle weakness. In both 2006 and 2008, Dr. Ganesh found that plaintiff had no muscle atrophy, and his strength was 5/5 in his upper and lower extremities. (T. 253, 247). Dr. Ganesh also found no sensory abnormality and negative straight leg raising bilaterally. (*Id.*)

The medical expert testified at plaintiff's hearing that his review of the medical records confirmed that plaintiff's impairments were not of Listing severity. (T. 524). The medical expert also testified that having a "herniated disc" alone is not determinative. (*Id.*) An individual may have a "herniated disc" that is "totally asymptomatic." The MRI findings must be correlated with the physical examination to determine whether those findings are "significant to his function." (T. 523). Although plaintiff's counsel noted that some of the medical records showed positive straight leg raising, the medical expert stated that those records[7] did not indicate to what degree the test was positive and did not indicate that the positive results were for

---

[7] The medical expert was referring to reports from UPM. (T. 347-75). There are six reports from this practice. Dr. Kuthuru's name alone appears on one of the reports. (T. 347-54). Dr. Ajay Kumar's name alone is at the end of three of the reports (T. 355-59, 360-62, 363-65). Two of the reports contain NP Dorothy Champney's name in addition to Dr. Kuthuru's name at the end of the report. (T. 366-68, 369-71).

both sitting *and supine* straight leg raising, a specific requirement for Listing 1.04.

Dr. Ganesh's June 10, 2008 report states that plaintiff's SLR was negative bilaterally, he had full range of motion in his cervical spine, full strength in his upper and lower extremities, full flexion of his thoracic and lumbar spine, 10 degree extension of the lumbar spine, no muscle atrophy, and no sensory abnormality. (T. 246-47).  Dr. Kuthuru's report, dated approximately 20 days later on June 30, 2008, stated that plaintiff's lumbar spine only had 50% range of motion. (T. 367).  Dr. Kuthuru's report also found "[s]trength, proprioceptive, and sensory deficits in the upper and lower extremities." (*Id.*)  The degree of "deficit" is not stated, and earlier in the paragraph, the report states that "[s]trength greater than 4/5 in the upper extremities" and "greater than 3+/5 in the lower extremities." (T. 367).  If the "deficit" to which the report refers is "3+" or "4" out of 5, then plaintiff does not have serious strength deficits.

On February 11, 2009, Dr. James Sawyer found that plaintiff was "grossly intact" neurologically; his deep tendon reflexes were 1+ in the upper and lower extremities; "[s]ensory, pulse, and cap refill symmetric X4; [b]alance is normal; and [l]eg raise negative." (T. 442).  Dr. Sawyer also found that palpation of the lumbosacral spine "shows no real bony point tenderness."  Plaintiff "complains mostly about right-sided sciatic distribution at times, but he does not have any at this point." (*Id.*)  There is no indication or basis in the record for finding that the sensory "deficits" are great enough to meet the criteria of Listing 1.04.  To the extent that the reports are inconsistent, conflicts in the evidence are for the ALJ to resolve. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 399

(1971)).  Thus, the ALJ was justified in relying upon the consulting physician and the medical expert in evaluating whether plaintiff met a listed impairment, and this finding is supported by substantial evidence.

### B.   RFC Determination

#### 1.   General Legal Standard for RFC

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities*. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.*  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

Plaintiff's counsel argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly consider the treating sources' opinions that plaintiff could not perform the functions required for sedentary work and

failed to provide a function-by-function analysis of plaintiff's RFC.

### 2.   Treating Physician Standard

A treating physician's opinion is not binding on the Commissioner; however, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected.  *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion.  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Plaintiff's counsel argues that Dr. Sennett completed an RFC evaluation, in January 2010, stating that plaintiff was incapable of even low stress jobs, could only sit for 15 minutes, stand for only five minutes, and could only sit and stand or walk for "less than 2 hours." (T. 408).  In addition, according to Dr. Sennett's RFC evaluation, plaintiff would need a job where plaintiff could shift positions and would have to be able to take "unscheduled" breaks 6-8 times, for ten minutes each, during an eight hour work day. (T. 409).  Plaintiff could rarely lift less than ten pounds and could never lift ten or more pounds. (*Id.*)  According to Dr. Sennett, plaintiff's pain would "[f]requently" interfere with the attention and concentration necessary to perform "even simple work tasks." (T. 410).  Based on Dr. Sennett's evaluation, plaintiff would be unable to do any sedentary work.

The ALJ rejected this restrictive opinion by Dr. Sennett, in part, because Dr.

Sennett had only examined plaintiff twice, and she did not report any examination findings on either occasion. (T. 27). Dr. Sennett's first report was written on October 5, 2009. She stated that plaintiff "has chronic low back pain, which *he states* came from strain 17 years ago, has occasional radiation to the right hip and knee. He treats himself with heat, a TENS unit, and ice. He does exercises twice a day and continues to go to physical therapy twice a day." (T. 434) (emphasis added). Dr. Sennett then discusses plaintiff's seizure disorder, and states that the "Review of Systems" is "Negative except as above." (*Id.*) The next page of the report states that her plan was to continue plaintiff's medications "as seizures are well-controlled," and "recommended that he continue his physical therapy, which he seems to find helpful in managing his back pain." (T. 435). There are absolutely no findings from any physical examination stated in this report. The only other report from Dr. Sennett is dated January 5, 2010, deals mostly with plaintiff's alcoholism, and only mentions his back problem to say that "he was in rehabilitation for his back, going to Physical Therapy regularly, and seemed to be doing well. He needs to resume that at this time." (T. 431).

The regulations specifically state that in determining the weight to be given to a physician's opinion, the Commissioner may consider the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i). In addition, the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and findings, the more weight we will give that opinion." *Id.* § 404.1527(d)(3). Dr. Sennett provided no medical signs and findings to support her RFC evaluation, thus, the ALJ was justified in giving that opinion "no significant

14

evidentiary weight." (T. 27).

Although plaintiff mentions reports by Dr. Wilson, who also practices at the same Health Center as Dr. Sennett, and who examined plaintiff more often than Dr. Sennett as supporting Dr. Sennett's RFC evaluation. (Pl.'s Br. at 17).  However, Dr. Sennett's restrictive opinion of the amount of weight that plaintiff could lift is inconsistent with Dr. Wilson's statement on January 25, 2008 that "we gave him a note saying he is unable to lift *greater than 10 pounds* due to his lumbar disk disease."[8] (T. 272) (emphasis added).  Ten pounds is the amount of weight required for a finding that plaintiff can perform sedentary work.  Thus, Dr. Wilson's statement does not support Dr. Sennett's RFC evaluation.

At the other extreme, the ALJ also rejected the state review physician's assessment that plaintiff could perform medium work because "there is sufficient pathology to limit the claimant beyond lifting and carrying 50 pounds occasionally and 25 pounds frequently." (T. 27).

Plaintiff argues that the ALJ failed to properly analyze NP Champney's opinion, in violation of the Appeals Council's direction. (Pl.'s Br. at 20, citing (T. 51)).  The ALJ's original decision contained a short paragraph, citing to NP Champney's very

---

[8] Plaintiff's brief cites the same statement by Dr. Wilson. (Pl.'s Br. at 17).  Plaintiff states that Dr. Wilson found that plaintiff would be unable to lift greater than 10 pounds and that the MRI showed central disc herniation. (*Id.*) (citing T. 272).  The ALJ does not question that plaintiff's has herniated discs, and does not question that plaintiff may not lift greater than ten pounds.  Rather, the ALJ finds that plaintiff's herniated discs do not produce the extent of the symptoms that he alleges.  The medical expert testified that the existence of herniated discs alone does not automatically mean that the individual cannot function since one can have a herniated disc that is asymptomatic. (T. 523).  This statement also does not mean that plaintiff has no pain, simply that the extent of his disability may not necessarily be shown by the MRI report. (*Id.*)  The ALJ did not find that plaintiff was asymptomatic.  He found that the extent of plaintiff's allegations were not credible as discussed below.

restrictive RFC evaluation, which stated that those restrictions had lasted since 1983. (T. 85). The ALJ rejected this opinion by stating that NP Champney only saw plaintiff twice, there was "no evidence to support such extreme restrictions back to 1983," and a nurse practitioner is not an acceptable medical source. (*Id.*) The ALJ then stated that "[t]his opinion is therefore given little weight." (*Id.*)

The Appeals Council stated that "further evaluation" of NP Champney's opinion was warranted because, even though she is not an acceptable medical source, the "information may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individuals ability to function." (T. 50).

In his new opinion, the ALJ stated that he did consider NP Champney's opinion and still found that it was entitled to very little weight. (T. 26). His reasons included that plaintiff was seen six times by practitioners at Dr. Kuthuru's practice, but only twice by NP Champney. Plaintiff's first visit to the practice was in 2007, and the ALJ found that NP Champney had no basis for finding that plaintiff's limitations had existed since *1983*. NP Champney's RFC evaluation refers the reader to "notes," but the ALJ correctly stated that the notes to which she refers do not support the extreme limitations that she includes in her RFC evaluation. (*Id.*) The ALJ also states that Dr. Kuthuru's notes from 2008 indicate that plaintiff's pain was better with sitting and that plaintiff stopped attending this pain facility and no longer uses narcotic pain medications.

A review of the records from UPM shows that the ALJ's updated analysis, rejecting NP Champney's RFC is supported by substantial evidence. While the ALJ's

16

new analysis is not a great deal longer than his first analysis, as stated above, he did clarify the bases for his finding.  In addition, the court notes that NP Champney's only completed parts of the RFC evaluation.  For some questions, she crossed out the form questions and simply wrote "see notes." (*See* T. 373, 374).  The court assumes that she was referring to the medical reports written by the practitioners at UPM, but it is unclear how these "notes" correlate to the restrictions that she imposes upon plaintiff. In her RFC, she indicates that plaintiff can sit for less than two hours "total" in an eight hour day (T. 374) and asks the reader to "see notes" for the amount of time that plaintiff can sit "at one time."  (*Id.*)  However, in her June 30, 2008 report, NP Champney states that plaintiff's pain was "worse" walking, standing, bending and twisting, but was "better" with heat, lying down, *walking*, and *bending*. (*Id.*)  In her July 28, 2008 report, she states that plaintiff's pain is "worse" when walking, sitting, standing, bending, and coughing, but "better" with heat, lying down, *sitting* and *walking*. (T. 371).  Clearly, there are typographical errors, however, these errors refer to critical issues involving plaintiff's ability to function.  There is absolutely no indication in the written "notes" of how long the plaintiff can sit at one time.  Thus, the ALJ was correct in stating that NP Champney's notes do not support such a restrictive RFC.

The ALJ was also correct in stating that NP Champney's notes were of questionable weight when she stated that this restrictive RFC "has persisted as such" since 1983. (T. 372).  Plaintiff did not begin going to UPM until June of 2007, NP Champney's signature does not appear until June of 2008, and she only saw plaintiff twice.  As the ALJ pointed out, it was impossible for her to determine that plaintiff's

17

level of disability existed since 1983, particularly since plaintiff is only claiming disability beginning in 2006, and by his own testimony, he worked as a commercial cook from 1991-99 and as a laborer from 1999 until he stopped working in 2006. (T. 473).  Plaintiff agreed that the work he did until 2006 was "pretty physical," testified that he lifted up to 50 pounds, and that he stopped working in 2006 because he had a seizure, not because of his back problem. (T. 476-77).

In its decision remanding the case for additional evaluation by the ALJ, the Appeals Council referred the ALJ to Social Security Ruling (SSR) 06-3p, which explains the difference between the analysis of acceptable medical sources and those that are not "acceptable"  medical sources.  Nurse practitioners are not "acceptable medical sources," but must be considered because their information "may" be based on special knowledge of the individual and "may" provide insight into the severity of the impairment and how it affects the individual's ability to function.[9] *See also* 20 C.F.R. §§ 404.1513(d), 416.913(d).  As the ALJ pointed out NP Champney only examined plaintiff twice according to the reports, and she did not form the requisite relationship with him to have her opinion given greater weight, particularly when her reports are vague and inconsistent with plaintiff's own stated abilities.  The fact that the ALJ reconsidered the opinion and came to the same result is not error.

---

[9] SSR 06-3p states that these "other sources" are important because:
> with the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled by physicians and psychologists.  Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

### 3.    Function-By-Function Analysis

Plaintiff argues that the ALJ should not have relied upon Dr. Ganesh's report because Dr. Ganesh did not specify a function-by-function analysis of plaintiff's capabilities. (Pl.'s Br. at 21).  However, Dr. Ganesh's reports contain physical findings based upon a physicial examination, and he does state that the plaintiff had no gross limitation sitting, standing, or walking. (T. 247).  The court notes that at plaintiff's first hearing in 2008, he testified that he could sit for 7 hours during the day. (T. 489). This statement is consistent with Dr. Ganesh's evaluations.  In 2008, Dr. Ganesh also stated that plaintiff had a mild to moderate limitation lifting, carrying, pushing or pulling because of his seizures. (T. 247).  The ALJ considered these additional limitations based on the evidence of record and issued an RFC that was consistent with the evidence.  In making an independent determination that plaintiff could perform sedentary work, the ALJ discounted the state agency physician's assessment that plaintiff could perform medium work.  The ALJ then specified a function-by-function analysis of plaintiff's capabilities, including the additional limitations that caused him to call a VE to testify at the hearing. (T. 25).  The VE testified at the hearing in support of the ALJ's finding at the final step of the disability analysis, that plaintiff could perform other work in the national economy.  Thus, the ALJ did conduct a function-by-function analysis, and his RFC determination was supported by substantial evidence.

### C.    Credibility

#### 1.    Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the

objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

20

measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### 2. Application

Because the ALJ properly rejected the Dr. Sennet's and NP Champney's RFC assessments finding that plaintiff was restricted from any activity, the ALJ then assessed plaintiff's credibility regarding the extent of his pain.  Plaintiff's counsel argues that the ALJ improperly found that plaintiff's back pain was "readily controlled" with medications, and instead, should have considered that "pain was often noted at an intensity of 8 to 10/10 in spite of medications."  (Pl.'s Br. at 23).  The court notes that the above intensity was stated by plaintiff, not the doctor, and the point of the ALJ's determination was that the plaintiff's stated intensity was not credible.

The ALJ acknowledged that plaintiff's medical condition could cause pain.  In accordance with the regulations, however, the ALJ also found that plaintiff testified at the original hearing that he could sit for seven hours during the day, that he had good activities of daily living, including doing volunteer work and socializing; that he helped with household chores; that at the time of the second hearing, plaintiff no longer took narcotic pain medication; and that ongoing treatment records showed no very significant side-effects from the medication. (T. 27).  The evidence also showed that his seizures were well controlled. (*Id.*)  These factors, together with the RFC evaluation from Dr. Ganesh supported the ALJ's finding that plaintiff's stated pain was not credible to the extent that it was inconsistent with the ability to do the limited

21

range of sedentary work as found by the ALJ.  Thus, the ALJ's credibility
determination is supported by substantial evidence in the record.

### D.     Burden at Step Five

#### 1.     Legal Standards

At step five of the disability analysis, the burden of proof shifts to the ALJ to
demonstrate that there is other work in the national economy that plaintiff can
perform.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), 20 C.F.R.
§404.1560(c)(2).  The ALJ may, under the appropriate circumstances, rely on the
"Medical Vocational Guidelines," contained in 20 C.F.R. Part 404, Subpt. P, App. 2,
known as "The Grids."  *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)
(footnotes omitted).  But if plaintiff has non-exertional impairments, and if those non-
exertional impairments "significantly limit the range of work" permitted by his
exertional impairments, the ALJ may be required to consult a vocational expert (VE).
*Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986).  In this case, the ALJ utilized a VE.

If the ALJ does use a VE, he must present the VE with a set of hypothetical
facts to determine whether plaintiff retains the capacity to perform any specific job.
*See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a
VE's testimony regarding the availability of work as long as the hypothetical facts the
expert is asked to consider are based on substantial evidence and accurately reflect the
plaintiff's limitations. *Calabrese v. Astrue*, 358 Fed. Appx. 274, 276 (2d Cir. 2009).
Where the hypothetical is based on an ALJ's RFC analysis which is supported by
substantial facts, the hypothetical is proper.  *See id*. at 276–277.  The ALJ is not
required to pose a hypothetical that includes non-severe impairments.  *See Dumas v.*

*Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983). A plaintiff will be found not disabled if the ALJ determines the plaintiff can perform work that exists in the national economy regardless of whether work exists in the immediate area in which plaintiff lives, a specific job vacancy exists for plaintiff, or plaintiff would be hired if she applied. 20 C.F.R. §§ 404.1566(a)(1)–(a)(3).

In this case, the ALJ found that plaintiff could not perform the full range of sedentary work and took testimony from a VE at the second hearing. Plaintiff's counsel argues that because the ALJ erred in his RFC determination, the VE's testimony was similarly flawed. Because this court has found that the ALJ's RFC determination was proper, and plaintiff makes no other arguments, challenging the VE's testimony, the plaintiff's last argument is moot.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 24, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge